THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD J. KAMINSKI, Defendant-Appellant.

Second District   No. 2—91—0952

Opinion filed June 16, 1993.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, Mary Beth Burns, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Edward J. Kaminski, was convicted in a bench trial in the circuit court of Du Page County of the criminal sexual assault of a 17-year-old minor, while he held a position of supervision in relation to her (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(4)), and sentenced to five years' imprisonment. Defendant filed a timely appeal of his conviction and sentence, raising the following issues: (1) whether the trial court erred in finding that defendant held a position of supervision in relation to the victim; and (2) whether the trial court abused its discretion in imposing a sentence of five years' imprisonment.

On October 18, 1990, the 17-year-old victim was living with her parents. Defendant was married to the victim's sister, Roberta, and

had known the victim for just over a year. On the evening of October 18, 1990, the victim; her parents; her half-brother, Ashley; Ashley's wife, Alison; Roberta and defendant were gathered at the victim's parents' residence. With her parents' and Roberta's permission, the victim went to spend the night at the apartment of Roberta and defendant. The victim drove herself to the apartment, arriving at about 1:30 a.m. on the morning of October 19, 1990. Ashley and Alison were also spending the night there. Both couples and the victim socialized for a short time and then retired. Roberta and defendant slept in one bedroom, Ashley and Alison in the guest room, while the victim slept on a sofa-bed in the living room.

The victim testified at trial that when she fell asleep the others were still up talking. She was awakened by defendant shaking her arm. Defendant then placed his hand under her blanket and began rubbing her thigh. The victim stated that defendant pulled down her shorts and panties and inserted his fingers in her vagina. During this time she was very scared and shocked, and she stiffened up. Defendant also placed his penis inside her vagina. When he was finished she felt a warm liquid on her thigh and buttocks, which she wiped off on the blanket. The victim testified that defendant returned to his room, and she eventually cried herself to sleep. Evidence was also presented that defendant told police that he had gotten up from bed that night, heard the victim coughing, placed a blanket on her and turned up the heat.

The trial court found the victim's testimony to be credible and corroborated by the scientific evidence presented at trial. In finding that the defendant held a position of supervision with respect to the victim, the court stated:

"[T]here was proper permission for [the victim] to spend the night along with her half brother and sister-in-law at the apartment of [defendant] and [Roberta]. It was their apartment.

The court finds that, permission having been granted, there was supervision under the circumstances, as required, by [defendant] and also by [Roberta]."

At the sentencing hearing, the court heard a victim impact statement read by the victim, which described the emotional impact of this crime. Specifically, she noted how she had considered defendant to be a trusted friend and like a brother, that she hated him for destroying this trust as well as her sister's happiness, and that this incident had caused her family "pain and hurt." The court also heard testimony from defendant's grandparents about his upbringing and how they planned to support defendant upon his release from the penitentiary.

The court noted that defendant had been convicted of a nonprobationable Class 1 offense. In mitigation the court noted defendant's age, his lack of prior juvenile or criminal record, a supportive family and educational background, and that counseling had been initiated. In aggravation, the court noted that this crime caused serious harm to the victim and that there was a need to deter others from committing the same type of offense. Considering these factors, the trial court sentenced defendant to five years' imprisonment.

On appeal, defendant argues that he was not proved guilty beyond a reasonable doubt because the only evidence showing he held a position of supervision in relation to the victim was that he was a "one-time over-night host." The State responds that defendant was in a position of supervision, being a "temporary caretaker" when he assaulted the victim.

■ Under section 12—13(a)(4) of the Criminal Code of 1961, the State is required to prove that a defendant "held a position of trust, authority or supervision in relation to the victim" when committing an act of sexual penetration. (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(4).) The indictment in the present case charged that defendant held "a position of supervision in relation to [the victim]." As the parties have noted, the term "supervision" is not defined by the statute. Accordingly, we must ascertain and give effect to the intent and meaning of the legislature. (See People v. Frieberg (1992), 147 Ill. 2d 326, 345.) In making this determination, we may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied and the purpose to be achieved. Frieberg, 147 Ill. 2d at 345.

As noted by defendant, section 5—5—3.2(a)(13) of the Unified Code of Corrections contains an analogous use of the phrase "position of supervision:"

"(a) The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence under Section 5—8—1:

* * *

(13) the defendant held a position of trust or supervision such as, but not limited to, teacher, scout leader, baby sitter [sic], or day care [sic] worker, in relation to a victim under 18 years of age ***." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(13).

■ The nonexhaustive list of examples provided under this statute is particularly significant because, like section 12—13(a)(4), this

statute is designed to address the special concerns which arise in cases involving child victims. "[S]upervise" has been generally defined to mean "superintend, oversee" (Webster's Ninth New Collegiate Dictionary 1185 (1985)). With respect to the phrase's specific use in section 12—13(a)(4), we find noteworthy the legislature's choice of the words "trust, authority, *or* supervision." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(4).) In common parlance, "supervision" can occur without authority or even trust, and the legislature's choice of language appears to contemplate application beyond those cases in which the accused adult had authority over the child victim or stood *in loco parentis*. To limit the meaning of the phrase "position of supervision" strictly to cases in which the accused has authority over the minor victim would render the term surplusage, in contradiction to one of the basic tenets of statutory construction. (See *Harris Bank v. Village of Mettawa* (1993), 243 Ill. App. 3d 103, 115.) Although a "position of supervision," considered in the context of its relation to children, may contemporaneously encompass aspects of "trust" and "authority," we also believe that the common meaning of the phrase applies in those situations in which an individual is an overseer, caretaker or chaperon of the child. The listed examples provided under section 5—5—3.2(a)(13) support this conclusion.

Defendant argues that the "trust, authority or supervision" provisions in section 12—13(a)(4) are designed primarily to prevent individuals from exerting undue influence over the child and are thus inapplicable in cases involving "one-night social hosts." The ability of individuals who hold positions of supervision to exert undue influence over a child is certainly a relevant factor. While we agree that this is one purpose served by the statute, we also recognize that it is the position of "trust, authority or supervision" which often provides a heightened opportunity for the sexual assault to occur. For example, a baby-sitter or camp counselor might be able to assault sexually a child under his or her supervision primarily because of the opportunity that position provides rather than because of any "undue influence" which is exerted over the child. The vulnerability of a child in such circumstances is a separate factor which justifies the stronger penalty provided under section 12—13(a)(4). Moreover, it is not unreasonable to consider the possibility that, in certain instances, increased emotional trauma may result from an assault perpetrated by one who has been entrusted to occupy a position of supervision over a child. We decline to adopt the restricted meaning of "supervision" proposed by defendant.

■ The next question is whether there was sufficient evidence introduced at trial to demonstrate that defendant held a position of supervision in relation to the victim. The standard for reviewing the sufficiency of evidence supporting a criminal conviction is whether, after considering all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Wittenmyer* (1992), 151 Ill. 2d 175, 190; *People v. Campbell* (1992), 146 Ill. 2d 363, 374.) This standard is applicable in criminal cases regardless of whether the evidence is direct or circumstantial. (*Campbell*, 146 Ill. 2d at 374.) A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses and will not reverse a criminal conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Campbell*, 146 Ill. 2d at 375.

The undisputed testimony demonstrated that the victim was a minor who resided with and was cared for by her parents. No evidence was presented to show she had ever been emancipated. Defendant was the victim's brother-in-law. She obtained permission from her parents and Roberta to spend the night at Roberta and defendant's apartment. The victim's father testified that Roberta and defendant were going to be responsible for her that night. Defendant's argument that the expectations of the victim, Roberta and their parents are insufficient evidence to establish that he occupied a position of supervision ignores the additional evidence pertaining to the circumstances of the victim's spending the night in defendant's home. Defendant was among the group meeting at the parents' home. They left together and travelled to the apartment, albeit in separate vehicles. They all socialized at the apartment, and the victim went to sleep on the sofa-bed while defendant and the others were still up talking.

When all the facts and circumstances are viewed in the light most favorable to the prosecution, an inference arises, considering particularly the familial relationship of all the parties involved, that both defendant and Roberta were responsible for looking after the welfare of the victim on the night in question. Defendant's actions, evidenced in his statement to police about having placed a blanket over the victim and turning up the heat when he heard her coughing that night, provide further support for the trial court's finding. We find defendant's assertion that he merely acquiesced to an overnight stay and did not hold a position of supervision over the victim to be an improbable

characterization of the undisputed evidence. Although the victim's age might have minimized the degree of "authority" defendant and Roberta could have exercised over her, it did not preclude their overseeing her overnight stay with the responsibility of notifying her parents if something went wrong and making certain that her needs were attended to, including providing a safe place for her to spend the night. We further note that defendant would not have had the opportunity to assault the victim sexually had her parents not entrusted her care to defendant and Roberta for the night.

■ Defendant has also argued that the trial court abused its discretion in imposing a five-year term of imprisonment. The determination of a sentence is a matter of judicial discretion, and the standard of review is whether the trial court abused its discretion in imposing the sentence. (*People v. Younger* (1986), 112 Ill. 2d 422, 427; *People v. Kerwin* (1993), 241 Ill. App. 3d 632, 636.) A violation of section 12–13(a)(4) is a nonprobationable Class 1 felony punishable by a term of not less than 4 nor more than 15 years' imprisonment. (Ill. Rev. Stat. 1989, ch. 38, pars. 12–13(b), 1005–5–3(c)(2)(H), 1005–8–1(a)(4).) The sentence imposed, as well as the comments of the court, indicate that a variety of aggravating and mitigating factors were considered by the court in reaching a sentencing decision. Given the victim's statement of the serious harm this assault caused to her and her family, we conclude that the trial court did not abuse its discretion in imposing a sentence slightly greater than the minimum mandatory sentence provided by law. See Ill. Rev. Stat. 1989, ch. 38, par. 1005–5–3.2; *People v. Ulmer* (1987), 158 Ill. App. 3d 148, 151.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and QUETSCH, JJ., concur.