**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220473-U

Order filed April 8, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0473 Circuit No. 20-CF-215 |
| EMONTE E. TURNER, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The evidence presented was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 2     Defendant, Emonte E. Turner, appeals from his convictions for aggravated criminal sexual assault and criminal sexual assault. Defendant contends the State failed to prove him guilty beyond a reasonable doubt, arguing there was no evidence presented establishing that defendant was either a family member of the victim or in a position of trust, authority, or supervision. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4          On February 27, 2020, defendant was indicted on two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3), (4) (West 2014)) and two counts of aggravated criminal sexual assault (*id.* § 11-1.30(a)(2)). These charges stemmed from acts alleged to have occurred between November 1, 2015, and January 31, 2016, and alleged that defendant was a family member of the victim, T.P., and held a position of trust, authority, or supervision over her. The case proceeded to a jury trial.

¶ 5          T.P. testified that she was born in January 2001. In the summer of 2013, when she was "12 or 13," she lived with her mother and younger brother in Naperville. T.P. disclosed that she had first met defendant when she was five or six years old. Defendant had been dating her mother and was the father of her two younger brothers, the youngest of whom was not born at the time of these events. She considered defendant to be her stepfather, though he and her mother had never married. In the winter of 2014, defendant moved in with them. T.P. was 13 years old at that time.

¶ 6          T.P. explained that after defendant moved in, her mother was working several jobs with both day and night shifts. T.P. indicated that either her grandfather or defendant would watch the children while her mother was at work. After her grandfather passed away in September 2015, defendant was responsible for supervising and discipling T.P. and her brother. Defendant lived with them continuously from the winter of 2014 until January 2016.

¶ 7          T.P. testified that in November 2015, she was a freshman in high school. Around that time, defendant asked her if she "liked boys, and if [she] was having sex." T.P. told defendant that she liked girls and was not sexually active. She indicated that she told defendant this because she "didn't want him to try anything." T.P. specified that she meant attempt sexual intercourse with her. She confirmed she and defendant had sexual intercourse that was initiated by defendant. T.P.

elaborated that defendant penetrated her vagina with his penis approximately every other week when her mother and brother were not in the residence. T.P. testified that the sexual intercourse continued until January 2016 when she informed defendant that she was pregnant. She gave birth to a daughter in September 2016. T.P. testified that when she first reported the assault to Naperville police in 2018, she had little to no memory of the events. She explained that she had been trying to forget that it happened.

¶ 8        On cross-examination, T.P. testified that she was interviewed several times by the police and a Children's Advocacy Center investigator. During the interviews, T.P. indicated that she had no memory of when she first had sexual intercourse with defendant. She also indicated that the sexual assaults began around November of her freshman year of high school. At an interview in 2022, T.P. told investigators that the sexual assaults began earlier when she was in seventh or eighth grade. She told investigators that she was not forced to have sexual intercourse with defendant and indicated that they had been in a sexual relationship. T.P. told investigators that she and defendant engaged in sexual intercourse on a weekly basis until January 2016 when she discovered that she was pregnant and told defendant that they needed to stop. T.P. told investigators that defendant had always used a condom. She had not told anyone about her relationship with defendant prior to 2018 because she "didn't think it was a big deal." T.P. indicated that she did not reside with her mother for the entirety of 2016 and returned to her mother's residence for the beginning of her sophomore year.

¶ 9        On redirect examination, T.P. explained that she had only seen defendant wear a condom occasionally, but she assumed that he was using them every time. T.P. also explained that her feelings about what had occurred between her and defendant changed as time passed. T.P. indicated that she had been naïve and "had a child mind set" in the past but "came to terms" with

3

defendant's actions. She clarified that her recollection had become better as time progressed because she was talking about the events more. She had been required to speak about the events in preparation for trial which also helped her recollection.

¶ 10    Detective Kate Koziol of the Naperville Police Department testified that she performed buccal swabs on both T.P. and her two-year-old daughter in 2018. She sealed the samples and entered them into evidence. Naperville Police Sergeant Erin Gibler testified that she searched for defendant for approximately 15 months before locating him and obtaining a buccal swab. Gibler sealed the sample and placed it into evidence. She requested all three samples from T.P., her daughter, and defendant be sent to the laboratory for DNA analysis. A forensic scientist testified that she had received the DNA samples from T.P., her daughter, and defendant. She performed DNA analysis on the samples to determine the paternity of T.P.'s child. DNA analysis established that the probability of defendant being the father of T.P.'s child was greater than 99.999%.

¶ 11    The jury convicted defendant on all four counts. Defendant filed two posttrial motions which were both denied. The court sentenced defendant to natural life imprisonment on one count of aggravated criminal sexual assault and a consecutive term of 30 years' imprisonment on one count of criminal sexual assault. The other two counts merged for the purposes of sentencing. Defendant appealed.

¶ 12    II. ANALYSIS

¶ 13    On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt where it failed to present evidence that defendant (1) had resided with T.P. for six consecutive months and (2) held a position of trust, authority, or supervision over T.P., prior to the time when he began sexually assaulting her. Defendant contends that these relationships must be established prior to the onset of the sexual assaults to be capable of sustaining defendant's convictions.

4

¶ 14        Relevant to this appeal, to sustain a conviction for two of the counts, the State was required to prove that defendant was a statutorily defined family member of T.P. For the other two counts, the State was required to prove that defendant held a position of trust, authority, or supervision over T.P. Defendant's arguments concern only the sufficiency of the evidence presented to establish these two elements. Accordingly, defendant has forfeited any additional arguments concerning the remaining elements of these offenses. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 15        Challenges to the sufficiency of the evidence at trial are reviewed to determine whether, in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31; *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

¶ 16                                    A. Family Member

¶ 17        For the purposes of criminal sexual offenses, an unrelated individual becomes a statutorily defined family member when they have continuously resided with a child under the age of 18 for at least six months. 720 ILCS 5/11-0.1 (West 2020). Here, the jury was asked to determine whether defendant sexually assaulted T.P. between November 1, 2015, and January 31, 2016, and if he was a family member of T.P. when the sexual assault occurred. The evidence demonstrates that defendant began residing with T.P. during the winter of 2014. This period could include January 2014 at the earliest and December 2014 at the latest. Even if we assume that defendant moved in on the very last day of 2014, he had been residing with T.P. for at least 10 months prior to

5

November 1, 2015. There was no evidence that T.P. or defendant lived elsewhere during this period. Accordingly, the evidence is sufficient for a reasonable jury to find that defendant was T.P.'s family member when he sexually assaulted her between November 1, 2015, and January 31, 2016.

¶ 18  In reaching this finding, we reject defendant's argument that the State failed to establish that defendant was a family member prior to the onset of the sexual assaults. Defendant contends that T.P. was unsure of when the sexual assaults began and that, based on the evidence, it could have begun as early as mid-2013, prior to defendant moving into the Naperville residence. T.P. testified that during her freshman year of high school, defendant initiated a sexual conversation with her, after which, he initiated sexual intercourse. She indicated that she was a freshman during the 2015-2016 school year. In her first interview with police and the Children's Advocacy Center investigator in 2018, T.P. indicated that she had a sexual relationship with defendant which began in November 2015. In her 2022 interview, T.P. informed investigators that the assaults began earlier in either seventh or eighth grade. On redirect examination, she explained the conflicting dates by indicating that her recollection had improved recently as she talked about the events in preparation for trial. It is the responsibility of the trier of fact to resolve any conflicts in testimony and weigh the evidence presented to it. *People v. Jackson*, 2020 IL 124112, ¶ 64. "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *Id.* Where T.P. testified that the assaults began in her freshman year of high school, specified in her first interview that it began in November of her freshman year, and explained the reason for her conflicting statements, the evidence presented is not so improbable or unsatisfactory that no reasonable juror could find that the abuse began in November 2015.

¶ 19 Further, we reject defendant's argument that the State must prove that he was a "family member" of the victim *before* the onset of his sexual conduct with the victim. Defendant was convicted of criminal sexual assault under section 11-1.20(a)(3) which states that "[a] person commits criminal sexual assault if that person commits an act of sexual penetration and *** is a family member of the victim, and the victim is under 18 years of age." 720 ILCS 5/11-1.20(a)(3) (West 2020). In pertinent part, " '[f]amily member' *** means, if the victim is a child under 18 years of age, an accused who has resided in the household with the child continuously for at least 6 months." *Id.* § 11-0.1 The plain language of the applicable statutes prohibits an individual who has resided with a child continuously for at least six months from committing an act of sexual penetration on a victim under the age of 18. Nothing in the statute indicates that the onset date of the initial sexual assault must occur *after* the defendant becomes a "family member." Accordingly, any time after a defendant has lived with the victim continuously for six months, acts of sexual penetration are a violation of section 11-1.20(a)(3). See 720 ILCS 5/11-1.20(a)(3) (West 2020).

¶ 20                                   B. Position of Trust, Authority, or Supervision

¶ 21 Section 11-1.20(a)(4) prohibits an adult from engaging in sexual conduct with a minor when that adult "holds a position of trust, authority, or supervision in relation to the victim." *Id.* § 11-1.20(a)(4). The phrase "position of trust, authority, or supervision" is not defined in the statute. Thus, reviewing courts have given these terms their common dictionary definition. *People v. Miki*, 2020 IL App (2d) 190862, ¶ 55. "The term 'trust' is defined as '[c]onfidence in the integrity, ability, character, and truth of a person ***.' " *People v. Secor*, 279 Ill. App. 3d 389, 396 (1996) (quoting American Heritage Dictionary 1300 (2d coll. ed. 1985)). " 'Authority' is '[t]he power to command, enforce laws, exact obedience, determine, or judge.' " *Id.* (quoting American Heritage Dictionary 142 (2d coll. ed. 1985)). The word "supervise" or "supervision" means to

7

" 'superintend, oversee' " *People v. Kaminski*, 246 Ill. App. 3d 77, 81 (1993) (quoting Webster's Ninth New Collegiate Dictionary 1185 (1985)). Because the language of the statute is in the disjunctive, courts will uphold a conviction where the evidence shows defendant's relationship with the victim fell within any of those three categories. *Miki*, 2020 IL App (2d) 190862, ¶ 56. We find the evidence clearly establishes that defendant held a position of both supervision and authority over T.P. during the period of November 1, 2015, until January 31, 2016. Testimony that defendant, exclusively, was responsible for supervising and disciplining T.P. when her mother was away from the residence after her grandfather died in September 2015 was uncontested.

¶ 22        Again, we reject defendant's argument that the State must establish that defendant was in a position of trust, authority, or supervision over T.P. prior to the onset of the sexual assaults. As discussed above, the evidence presented regarding the commencement of the sexual assaults is sufficient to establish that date as November 2015. *Supra* ¶ 18. Additionally, the plain language of the statute does not require the position of trust, authority, or supervision to be established prior to the onset of the sexual assaults. "[I]f a defendant occupies a position of trust, authority or supervision *at any time* when he engages in sexual intercourse with a minor \*\*\*, his conduct is prohibited" by section 11-1.20(a)(4). (Emphasis added.) *People v. Reynolds*, 294 Ill. App. 3d 58, 67 (1997).

¶ 23        Here, defendant was not a stranger but someone T.P. was well acquainted with. Defendant had been a part of T.P.'s life from a young age. She considered him a father figure. Defendant was the father of T.P.'s siblings. Defendant supervised and disciplined T.P. when her mother was not present, especially once T.P.'s grandfather passed away. This evidence is more than sufficient to establish that defendant held a position of trust, authority, or supervision during the November 1, 2015, to January 31, 2016, time period when he engaged in sexual intercourse with T.P.

¶ 24                                  III. CONCLUSION

¶ 25        The judgment of the circuit court of Du Page County is affirmed.

¶ 26        Affirmed.