2024 IL App (2d) 240095-U
No. 2-24-0095
Order filed May 16, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CF-173 |
| ISMAEL PALMA HERNANDEZ, | ) ) | Honorable Michael J. Noland, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court abused its discretion in denying the State's verified petition to deny defendant pretrial release because its findings, that the State had failed to show by clear and convincing evidence that the proof was evident or presumption great that defendant committed the charged offenses and defendant posed a real and present threat to the safety of any person persons or the community, were based on facts not in the record and therefore improperly considered by the court, additionally, assuming arguendo those facts were not against the manifest weight of the evidence, the totality of the evidence supports our determination that the ultimate decision to grant release was against the manifest weight of the evidence and an abuse of discretion. Reversed and remanded.

¶ 1    The State appeals the trial court's order denying its verified petition to deny defendant

Ismael Palma Hernandez pretrial release under section 110-6.1 of the Code of Criminal Procedure

of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the following reasons, we reverse and remand for further proceedings.

¶ 2     On January 27, 2024, defendant was charged via complaint with aggravated criminal sexual assault (count 1) (720 ILCS 5/11-1.30(a)(2) (West 2022)), criminal sexual assault (counts 2-8) (*id.* § 11-1.20(a)(4)), and aggravated criminal sexual abuse (counts 9-15) (*id.* § 11-1.60(d)) based on allegations that he had sexual relations with B.G., a minor, and caused her to become pregnant.

¶ 3     On January 27, 2024, the State filed a verified petition to deny pretrial release. On January 28, 2024, a hearing was held on the State's petition. Defendant appeared at the hearing and was assisted by a Spanish language interpreter.

¶ 4     The State presented a police synopsis in support of its petition. The pertinent contents are as follows.

¶ 5     On January 23, 2024, the Kane County Child Advocacy Center received a new report of alleged sexual abuse of a child from the Sugar Grove Police Department.

¶ 6     On January 24, 2024, B.G. [age 16] participated in a child forensic interview at the Kane County Child Advocacy Center. At the interview B.G. disclosed she was pregnant by defendant [age 31]. B.G. had visited the hospital on January 20, 2024, where doctors confirmed she was six months pregnant. B.G. said that defendant was a family friend who worked for her dad and rented a house from her dad. B.G. began talking with defendant when they worked together for her dad. They eventually formed a relationship, which they kept secret from B.G.'s parents, who were very strict. She and defendant had sex "more than 5-6 times," she put her mouth on his penis more than once, and the two had shared nude pictures of themselves with each other.

¶ 7     On January 26, 2024, defendant was arrested and interviewed by Detectives Navarrete and Velazquez. Defendant was Mirandized and spoke with the officers. According to defendant, he met B.G. when she was eight years old. Defendant had been asked by B.G.'s father to pick her up from various locations and had been invited to the family's house. He denied having any type of sexual relationship with B.G. Defendant stated that he had received permission from B.G.'s parents that he could come to the house and get to know her, but that they could not date until she was of age. When defendant was advised that B.G. was pregnant, he responded by saying that if the baby was his he would take responsibility and help take care of it.

¶ 8     Defendant did not have a criminal record.

¶ 9     Defendant proffered that he owned a landscaping and tree business, and he offered to undergo a paternity test to show he was not the father of B.G.'s child.

¶ 10    Following argument by the parties the trial court denied the State's petition. In doing so, the court found that the State had not proven by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the charged offenses. Specifically, the trial court expressed doubt regarding whether defendant had been Mirandized, stating:

> "I specifically want to make clear that in reading the synopsis from the police report, I'm not sure that the gentleman, that the defendant was Mirandized and that he made his statements however perhaps indicative of some relationship with the alleged victim, that he did so understanding necessarily what was being asked of him."

¶ 11    The trial court likewise found that defendant did not pose a real and present threat to the community or B.G, stating:

"I've also considered the identity of the persons to whom the defendant may pose a threat. I do note specifically that the information came to the Child Advocacy Center by way of a report from a police department, not necessarily the victim directly.

\* \* \*

[T]he Court further finds that the defendant does not pose a real and present threat to the larger community or this individual, who, again, was not this individual that stepped forward."

¶ 12    Neither party made any argument or statement regarding whether defendant had been Mirandized or the source of the Sugar Grove Police Department's information regarding the alleged misconduct.

¶ 13    The State timely appealed.

¶ 14    On appeal the State argues that the trial court's findings that (1) the State failed to show by clear and convincing evidence that the proof was evident or presumption great that defendant committed the charged offenses and (2) defendant posed a real and present threat to the safety of any person, persons, or the community were against the manifest weight of the evidence and therefore the trial court's order denying the State's verified petition to deny pretrial release was an abuse of discretion. The State maintains that it proffered sufficient evidence that defendant committed the charged offenses, and that in reaching its decision the trial court improperly relied on matters that were not in evidence, including who had made the initial outcry regarding the alleged misconduct and the court's doubt regarding whether defendant had been Mirandized.

¶ 15    On an appeal from an order denying a State's verified petition to deny pretrial release, we review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the

evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 16    The State argues that there was sufficient evidence that defendant committed the charged offense of aggravated criminal sexual assault, which is one of the enumerated offenses under section 110-6.1(a)(1.5) of the Code. 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 17    To deny defendant pretrial release the State needed to show by clear and convincing evidence that the proof was evident or presumption great that defendant committed the charged offense, that defendant posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the threat posed by defendant. *Id.* § 110-6.1(e)(1)-(3).

¶ 18    To support its charge of aggravated criminal sexual assault, the State needed to show that defendant was 17 years of age or over and held a position of trust, authority, or supervision in relation to B.G., that B.G. was at least 13 years of age but under 18 years of age, that defendant committed an act of sexual penetration against B.G., and that during the commission of the offense he caused bodily harm to B.G. 720 ILCS 5/11-1.30(a)(2) (West 2022). Bodily harm for the purposes of aggravated criminal sexual assault includes pregnancy. *Id.* § 11-0.1.

¶ 19    Most of the elements of the charge of aggravated criminal sexual assault are clearly evident in the record. Defendant was 31 years of age at the hearing and B.G. was 16. B.G. stated in the child forensic interview that she and defendant had sex "more than 5-6 times" and that she was six

months pregnant. Although defendant denied having any type of sexual relationship with B.G., he also stated that if the baby was his, he would take responsibility and help take care of it. While not strictly speaking an admission of guilt, this statement is nevertheless highly suggestive that defendant engaged in a sexual act with B.G.

¶ 20    Regarding whether defendant held a position of trust, authority, or supervision, defendant stated to police that he had been invited to B.G.'s family's house by her father and asked by her father to pick B.G. up from various locations. B.G. described defendant as a family friend. "The term 'trust' is interpreted to mean confidence in the integrity, ability, character, and truth of a person." *People v. Miki*, 2020 IL App (2d) 190862, ¶ 55. Where a defendant is a long-time friend of the victim's family, a circumstance exists that is likely to generate mutual trust. *People v. Secor*, 279 Ill. App. 3d 389, 394 (1996). Further, the fact that defendant was entrusted with driving B.G. to different places shows that he accepted the role of a chaperone which creates an inference of trust and supervision. *Id.*

¶ 21    In finding that the State had failed to show by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the charged offenses, the court expressed doubt as to whether defendant had been Mirandized, and whether he gave his statements to police "understanding necessarily what was being asked of him." We agree with the State that there is absolutely nothing in the record before us which would suggest that defendant had not been Mirandized or that he did not understand the questions being asked of him. The unrebutted police synopsis unequivocally states that defendant was Mirandized prior to questioning. Defendant made no suggestion or argument to the contrary before the trial court. On appeal, defendant maintains that the court's doubt regarding whether defendant was Mirandized was reasonable because defendant required a Spanish interpreter at the detention hearing, and the police

synopsis did not indicate that the interrogating officers spoke Spanish or utilized an interpreter. We reject this argument, as it calls for further speculation regarding facts which are not in the record.

¶ 22     As such, the trial court's finding was not based on the evidence presented and therefore against the manifest weight of the evidence. Further, as the trial court's finding was against the manifest weight of the evidence, its reliance on that finding to deny the State's verified petition was unreasonable and therefore an abuse of discretion.

¶ 23     We turn now to the court's finding that the State failed to show by clear and convincing evidence that the proof was evident or presumption great that defendant posed a real and present threat to the safety of any person, persons, or the community. The nature and circumstances of the charged offense is the first factor enumerated in section 110-6.1(g) of the Code regarding factors to be considered in making a determination of dangerousness. 725 ILCS 5/110-6.1(g)(1) (West 2022). As such, the reasonableness of the trial court's finding regarding dangerousness depends in part upon the reasonableness of its finding regarding the commission of the charged offense.

¶ 24     Further, the trial court made it clear that in considering dangerousness it specifically considered that B.G. "was not this individual that stepped forward." The trial court again made an assumption that was not supported by the evidence in the record. The police synopsis indicated only that the Kane County Child Advocacy Center received a report from the Sugar Grove Police Department. There is no indication in the record as to where the Sugar Grove Police Department received its information. Even if the victim was not the initial source, the only evidence in the record shows that she voluntarily went to the Kane County Child Advocacy Center and gave a statement incriminating defendant. We fail to see how a minor victim's status as initiator of a report has any bearing on a defendant's likely guilt or potential threat. Accordingly, the trial court's

finding regarding dangerousness was likewise unreasonable and against the manifest weight of the evidence. Further, assuming arguendo those facts were not against the manifest weight of the evidence, the totality of the evidence supports our determination that the ultimate decision to grant release was against the manifest weight of the evidence and an abuse of discretion.

¶ 25    For these reasons, we reverse the judgment of the Kane County circuit court and remand for a new hearing on the State's verified petition to deny defendant pretrial release, with the instruction that the trial court is to consider only those matters which appear in evidence.

¶ 26    Reversed and remanded.