# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Feller*, 2012 IL App (3d) 110164

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHAN B. FELLER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0164 |
| Filed | October 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was in "a position of trust, authority, or supervision in relation to the victim" for purposes of his convictions for aggravated criminal sexual assault and criminal sexual assault, since he assisted the blind victim while they were swimming in a lake on the day of the offenses. |
| Decision Under Review | Appeal from the Circuit Court of Putnam County, No. 10-CF-14; the Hon. Kevin R. Galley, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

James A. Mack, State's Attorney, of Hennepin (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Lytton dissented, with opinion.

**OPINION**

¶ 1      Defendant, Nathan B. Feller, was convicted of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2010)), criminal sexual assault (720 ILCS 5/12-13(a)(4) (West 2010)), and aggravated criminal sexual assault (720 ILCS 5/12-14(a)(6) (West 2010)). The trial court sentenced defendant to 20 years' imprisonment for the aggravated criminal sexual assault charge. The court did not sentence defendant on the other charges. Defendant appeals, arguing that his convictions for criminal sexual assault and aggravated criminal sexual assault should be reversed because the evidence did not support a finding that defendant was in a position of trust, authority, or supervision in relation to the victim. We affirm.

¶ 2                                         FACTS
¶ 3      Defendant was charged with two counts each of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2010)), criminal sexual assault (720 ILCS 5/12-13(a)(4) (West 2010)), and aggravated criminal sexual assault (720 ILCS 5/12-14(a)(6) (West 2010)). The counts alleging criminal sexual assault and aggravated criminal sexual assault claimed that defendant was in a position of trust, authority, or supervision to the victim. All of the counts were the result of a July 31, 2010, incident whereby the State alleged that defendant placed his fingers and penis in the vagina of an individual who was at least 13, but under 17, years of age. The cause proceeded to a bench trial.

¶ 4      At trial, Putnam County Sheriff's Deputy David Gapinski testified that he began an investigation of the incident after the victim's father visited the sheriff's office and reported that his 14-year-old daughter had sex with defendant, whom he believed was 32. The State introduced a recorded interview of defendant conducted at the Putnam County sheriff's office. Defendant told the officers that he was 31 and that he was with the victim at Lake Thunderbird the day of the offense. Defendant stated that he swam with the victim because

she was blind and needed assistance in the water. Eventually, defendant admitted to kissing the victim and placing his finger in her vagina while they swam in the lake. Defendant denied penetrating the victim's vagina with his tongue or penis.

¶ 5      The victim's mother testified that the victim was 14 years old on the date of the offense. She further stated that the victim suffers from Leber's congenital amaurosis and had been blind since birth. She stated that while the victim can swim in a lake, she needs the assistance of a sighted person to guide her through the water. According to the victim's mother, the victim could never swim in a lake unassisted.

¶ 6      The victim testified that she had been blind since birth and required assistance when she swam in a lake. In fact, she stated that she had never swum in a lake without someone that she trusted to assist her. She stated that she went to Lake Thunderbird with friends on July 31, 2010. She knew everyone in the group except for defendant, whom she met for the first time at the lake. Defendant assisted the victim a number of times while she was in the water. He guided her from the shore to a dock out in the lake and back. The victim stated that she would not have been able to swim to the shore without defendant helping her.

¶ 7      While they were in the lake, defendant and the victim began kissing and touching each other. Defendant then began biting the victim's neck and chest. According to the victim, defendant then inserted his finger, tongue, and penis into her vagina. When the victim returned home, her father noticed the bite marks and inquired as to how she received them. She informed him that defendant had given them to her. Thereafter, the victim's father brought her to the police station.

¶ 8      After the close of the State's evidence, defendant sought a directed finding of not guilty on the criminal sexual assault and aggravated criminal sexual assault charges. He argued that the State had failed to offer any evidence which supported a finding that defendant was in a position of trust, authority, or supervision in relation to the victim. The court denied defendant's motion, finding that the victim was reliant on defendant's aid while out in the lake and that the reliance created a position of trust, authority, or supervision.

¶ 9      Thereafter, defendant testified in his own defense. He stated that he only assisted the victim on two different occasions totaling four to six minutes. He denied placing his finger, tongue, or penis in the victim's vagina.

¶ 10      The trial court found defendant guilty of one count each of aggravated criminal sexual abuse, criminal sexual assault, and aggravated criminal sexual assault. Defendant was sentenced to 20 years' imprisonment only on the aggravated criminal sexual assault charge. Defendant appeals.

¶ 11                                   ANALYSIS

¶ 12      Defendant argues that his convictions for aggravated criminal sexual assault and criminal sexual assault should be reversed because the evidence was insufficient to prove that he was in a position of trust, authority, or supervision in relation to the victim. When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry defendant; rather, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237 (1985). A conviction will only be overturned where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Smith*, 185 Ill. 2d 532 (1999).

¶ 13　　In order to convict defendant of criminal sexual assault and aggravated criminal sexual assault, the State had to prove that defendant held a position of trust, authority, or supervision over the victim. 720 ILCS 5/11-1.20(a)(4) (West 2010). To that end, evidence was presented that established that the victim: (1) was 14 years old and legally blind; (2) could not swim in a lake unassisted and would not swim with someone whom she did not trust; (3) was assisted by defendant while they both swam in a lake the day of the incident; and (4) would not have been able to swim without defendant's assistance.

¶ 14　　We find that the evidence was sufficient to established that defendant was in a position of supervision and trust over the victim. Supervise has been defined to mean "superintend" or "oversee." (Internal quotation marks omitted.) *People v. Kaminski*, 246 Ill. App. 3d 77, 81 (1993). An individual who assists a blind swimmer in her progress from the shore out into a lake can be said to be overseeing the actions of the swimmer. Defendant was also in a position of trust. The victim stated she would only swim in a lake with someone she trusted. Further, common sense dictates that an individual guiding a blind person out into an unknown body of water is in a position of trust with that person.

¶ 15　　Defendant further argues that the legislature did not contemplate that short-term offers of assistance, where a defendant was in a position of trust, authority, or supervision for only a short duration, could result in enhanced criminal liability. We disagree. The language of the statute simply states that a person can commit criminal sexual assault if he held "a position of trust, authority, or supervision in relation to the victim." 720 ILCS 5/11-1.20(a)(4) (West 2010). The statute makes no reference to duration. As stated above, here, the evidence was sufficient to find that defendant was in a position of trust. Therefore, defendant's convictions for criminal sexual assault and aggravated criminal sexual assault are affirmed.

¶ 16　　　　　　　　　　　　　　　　　CONCLUSION

¶ 17　　The judgment of the circuit court of Putnam County is affirmed.

¶ 18　　Affirmed.

¶ 19　　JUSTICE LYTTON, dissenting.

¶ 20　　In my view, the statutory reference to "a position of trust, authority or supervision in relation to the victim" does not apply to actions based on the momentary assistance defendant offered in this case. 720 ILCS 5/12-13(a)(4) (West 2010). Accordingly, I respectfully dissent.

¶ 21　　Section 12-13(a)(4) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-13(a)(4) (West 2010)) provides:

　　　　"(a) The accused commits criminal sexual assault if he or she:

(4) commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim."

¶ 22    The statute does not define "trust," "authority" or "supervision." Accordingly, we must ascertain and give effect to the intent of the legislature, given the plain and ordinary meaning of the statutory language. *People v. Jamison*, 229 Ill. 2d 184 (2008); *People v. Ward*, 215 Ill. 2d 317 (2005). The ordinary meaning of the word "trust" is "a confident dependence on the character, ability, strength, or truth of someone." Webster's Third New International Dictionary 2456 (1976). The word "supervise" or "supervision" means "to coordinate, direct and inspect continuously" (Webster's Third New International Dictionary 2296 (1976)) or, as the majority notes, to " 'superintend' " or " 'oversee' " (*supra* ¶ 14 (quoting *Kaminski*, 246 Ill. App. 3d at 81)).[1]

¶ 23    Defendant's role in temporarily helping the victim swim is hardly captured by the meaning of the statutory language. At trial, the victim testified that she was a member of the swim team at her school and considered herself to be a good swimmer, even though she had been blind since birth. On July 31, 2010, the victim and her cousin, Taylor, joined a group of teenagers at Lacon Marina and went to Lake Thunderbird. Taylor made the arrangements to spend the day at the lake and swim with friends. The victim knew everyone there except defendant. When the victim and Taylor asked defendant how old he was, defendant responded "old enough." The victim assumed defendant was only four or five years older than she. The victim's mother testified that the victim had gone swimming at the lake on another occasion, had swum at another lake on several occasions, and was a good swimmer. Defendant testified that no one was swimming with the victim, so he swam out to her and swam back with her so she could swim to the shore.

¶ 24    This evidence does not rise to the level of "trust" as that term is ordinarily defined. The victim did not know defendant before they met that day. Thus, she could not have been acquainted with defendant sufficiently to have any confidence in his "integrity, ability, character and truth." See *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119, 1028 (2011) (diocese and priests were in a position of "trust and confidence" over alleged victim where victim grew up attending church every Sunday and was taught "to respect the priests, to believe what they said was true, and to obey them."); *People v. Bien*, 277 Ill. App. 3d 744 (1996) (breach of "confidence and trust" committed by daycare worker who abused preschoolers that he instructed during a four-year period).

¶ 25    The majority also relies on the term "supervise," concluding that defendant's action constituted supervision over the victim. The majority restates the dictionary definition of "supervise"; that is, to "superintend" or "oversee." *Supra* ¶ 14. However, the majority's analysis provides us with a legal conclusion that "[a]n individual who assists a blind

---

[1]The majority does not claim, nor do the parties argue, that defendant held a position of "authority" in relation to the victim. I agree, and therefore find it unnecessary to define that term.

swimmer in her progress from the shore out into a lake can be said to be overseeing the actions of the swimmer." *Supra* ¶ 14. No other indicia of supervision was demonstrated, only defendant's act of momentary assistance. In enacting section 12-13(a)(4), the legislature sought to prevent sex offenses "by those whom a child would tend to obey, such as a teacher or coach, as well as those in whom the child has placed his trust." *People v. Secor*, 279 Ill. App. 3d 389, 396 (1996). It is this position of supervision or trust that makes the child particularly vulnerable, and it is the betrayal of this position that makes the offense unusually devasting. *Id.* In its broad interpretation of the statute, the majority finds that if a defendant provides even momentary assistance to a person with whom he or she has no other relationship, liability attaches under the statute based on a position of "supervision and trust over the victim." I do not agree.

¶ 26 In *Secor*, defendant was a family friend who had known the victim for 10 years. Prior to the incident, the victim and his older brother had spent the night at defendant's house approximately six times, visiting defendant's son. Based on those facts, the reviewing court found that there was sufficient evidence to find that defendant held a position of "supervision or trust" in relation to the victim. *Id.* at 394; see also *Kaminski*, 246 Ill. App. 3d at 82-83 (conviction under section 12-13(a)(4) upheld where defendant was the homeowner and overnight host of the victim, his 17-year-old sister-in-law, based on trial court finding that under those circumstances, a position of supervision was proven).

¶ 27 In this case, defendant did not act as the legislature intended. He was not a family friend who had known the victim for years; he was not related to the victim; he was not an overnight host who was the father of a teenage friend; he had not established a bond of trust with the victim based on previous encounters. Thus, defendant was not in a position of trust, nor was he in a position to "superintend" or "oversee" the victim.

¶ 28 Defendant's sexual abuse of a 14-year-old girl who is blind is reprehensible. Nevertheless, we should not let that fact distort our legal analysis. We must still properly analyze and interpret section 12-13(a)(4) of the Code to determine if defendant committed aggravated criminal sexual assault. Under these circumstances, I believe the statutory language does not support criminal liability for sexual assault under section 12-13(a)(4) as alleged in counts IV and VI. However, I would affirm defendant's conviction for criminal sexual abuse as stated in count I.