No. 3--07--0610

_____

Filed August 1, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--684 |
| MARCUS GROCESLEY, | ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

Justice Carter delivered the opinion of the court:

_____


The defendant, Marcus Grocesley, was convicted of three counts of criminal sexual assault, and sentenced to three consecutive terms of 50 months imprisonment. 720 ILCS 5/12--13(a)(4) (West 2004). The defendant contends that the State failed to prove that he held a position of trust, authority, or supervision in relation to the victim. We affirm.

The defendant was indicted on three counts of criminal sexual assault and three counts of aggravated criminal sexual abuse for engaging in sexual penetration with M.C.R. Each count of criminal sexual assault alleged that during certain time periods the defendant, who was 17 years of age or older,

knowingly committed an act of sexual penetration with M.C.R., who was at least 13 but under 18 years old, and the defendant held a position of trust, authority or supervision in relation to M.C.R. in that the defendant was a track coach for the Joliet Township High School District (school district). The school district is comprised of two schools, Joliet Central High School and Joliet West High School. The two schools are combined into one school district-wide sports program. There is one team for the school district in any given sport comprised of students from both schools who practice and compete together. The three aggravated criminal sexual abuse charges alleged that during specific time periods the defendant knowingly committed an act of sexual penetration with M.C.R., who was at least 13 but under 17 years old, and the defendant was at least five years older than her.

At trial, M.C.R. testified that she was born in August 1990. She met the defendant at a high school football game in October 2005. She was 15 years old, and was a sophomore at Joliet West High School. She was a cheerleader and on the girls' track team for the school district. She had attended a different high school during the 2004-2005 school year.

The night she met the defendant, she was cheering for the school football team, and she was wearing her cheerleading uniform. She next spoke to the defendant at a high school basketball game, where she was cheering. When she saw the

2

defendant at another basketball game in December 2005, she gave him her phone number.

He called her that night, and she told him that she was 15 years old. He told her that he was 21 years old. The defendant asked M.C.R. if he could come to her home, and she said yes. He arrived at her home around midnight, when her parents were asleep. M.C.R. let the defendant into the house. They went to her bedroom, and engaged in oral and vaginal sex.

In January 2006, the defendant went to M.C.R.'s home again, and they had oral and vaginal sex. M.C.R. also testified that she and the defendant engaged in vaginal sex in his car, and at the home of the defendant's friend. On January 28, 2006, the defendant went to M.C.R.'s home late at night, and engaged in oral and vaginal sex with M.C.R. and her 16-year-old friend.

In late January or early February 2006, M.C.R. saw the defendant at Joliet Central High School talking to the coaches of the boys' track team during track practice. Sometime after this day, in February 2006, the defendant went to M.C.R.'s home. After they had oral and vaginal sex, the defendant told M.C.R. that he could not see her anymore because he was trying to straighten out his life and become a track coach.

Andrew Harris testified that he was a teacher and a boys' track team coach for the school district. The indoor track season typically began around February 1, but there may have been

practices held before that date.  In 2005, Harris was the head coach of the boys' indoor track team.  The defendant worked with the team daily during the 2005 season.  Harris introduced the defendant to the team as a coach, and the defendant was present during team meetings.  The defendant had authority to organize and conduct practices with the sprinters, and to impose penalties on students who were late for practice.  The defendant also attended indoor track meets.  Harris also observed the defendant assisting coaches during outdoor track practices and meets.  The defendant appeared in the team yearbook picture in 2005, which referred to him as coach Marcus Grocesley.

The 2006 indoor track season began on or around February 1, 2006.  The defendant again acted as an assistant coach.  The defendant assisted during practices, and attended team meetings.  The defendant was also in the team picture taken in 2006.

In January 2006, the school district's athletic director informed Harris that all of the assistant coaches must be certified by the State of Illinois.  The defendant was not certified.  Harris and the defendant discussed certification approximately three times.  The defendant never told Harris that he had become certified.

Christopher Olson testified that he had been the athletics director at the school district since July 2004.  Sometime during the 2005-06 school year, Olson noticed the defendant in the

4

hallways and working with the boys' track team. The defendant was not a paid staff member or a certified volunteer. Olson discussed the certification requirement with the defendant, and Olson told the defendant he could not assist the team until he was certified. To Olson's knowledge, the defendant was never certified as a coach.

Several other school district athletics coaches also testified that he or she observed the defendant assisting during the boys' track practices in 2005 and 2006. The school district superintendent testified that the defendant had never been an employee or official volunteer at the school district. The defendant admitted to a police officer that he had engaged in sexual acts with M.C.R. The defendant also told an officer that he had been assisting the school district's boys' track team since 2005.

The jury found the defendant guilty on all counts. Following a sentencing hearing, the court found that the convictions for aggravated criminal sexual abuse merged into the convictions for criminal sexual assault. The court imposed three consecutive terms of 50 months imprisonment.

On appeal, the defendant presents four claimed errors, each of which argue that the State failed to prove he was guilty of criminal sexual assault because the evidence did not establish that he held a position of trust, authority or supervision in

5

relation to M.C.R.  First, the defendant claims the court erred by denying his motion for a directed verdict because the State failed to present a prima facie case that he was guilty of criminal sexual assault.  A motion for a directed verdict asserts that as a matter of law the evidence is insufficient to support a finding of guilt.  People v. Cazacu, 373 Ill. App. 3d 465, 869 N.E.2d 381 (2007).  Considering the evidence most strongly in the State's favor, the court determines whether a reasonable jury could find the defendant guilty beyond a reasonable doubt.  Cazacu, 373 Ill. App. 3d 465, 869 N.E.2d 381.  On review, we consider the question de novo.  Cazacu, 373 Ill. App. 3d 465, 869 N.E.2d 381.

A person commits criminal sexual assault if he commits an act of sexual penetration with a victim who is at least 13 years of age but under 18 years of age, and the defendant was 17 years of age or older and held a position of trust, authority or supervision in relation to the victim.  720 ILCS 5/12--13(a)(4) (West 2004).  The statute does not define the terms trust, authority or supervision.  This court, however, has previously stated that these words are presumed to have their ordinary and popularly understood meanings.  People v. Secor, 279 Ill. App. 3d 389, 664 N.E.2d 1054 (1996).  "It is evident that, in enacting section 12--13(a)(4), the legislature sought to prevent sex offenses by those whom a child would tend to obey, such as a

6

teacher or coach, as well as those in whom the child has placed his trust[.]" Secor, 279 Ill. App. 3d at 396, 664 N.E.2d at 1059.

In this case, the State alleged that the defendant held a position of trust, authority or supervision in that he was a track coach for the school district where M.C.R. was a student. The defendant maintains that the evidence did not establish that he held a position of trust, authority or supervision in relation to M.C.R. because he was not an official coach, and M.C.R. did not know he was a coach when they began their sexual relationship. The defendant does not dispute that he had a sexual relationship with M.C.R.

First, we find that the evidence was sufficient to prove that the defendant was a coach. Harris, the boys' head track coach, testified that the defendant acted as an assistant coach for the school district during the 2005 and 2006 track seasons. Harris introduced the defendant to team members as a coach, and allowed the defendant to participate in team meetings as well as practices and meets. Olson noticed the defendant working with the boys' track team in 2006, and discussed the certification requirement with the defendant. Several other school district employees also testified that they witnessed the defendant acting as a coach with the team in both 2005 and 2006. The defendant was included in team pictures in both of these years. The

7

defendant also admitted to police that he assisted the track team in 2005 and 2006.  This evidence was sufficient to prove that the defendant was an assistant boys' track coach, even if he was not properly certified.

Next, we disagree with the defendant's position that he did not hold a position of trust, authority or supervision in relation to M.C.R. because she did not know he was a coach when they began their sexual relationship.  Section 12--13(a)(4) of the Criminal Code of 1961 does not require that the victim possess knowledge of the perpetrator's position of trust, authority or supervision in relation to her.  720 ILCS 5/12--13(a)(4) (West 2004).  Although there are possible scenarios where a victim's knowledge of a defendant's position contributes to the defendant's manipulation or undue influence of the minor, which then results in sexual penetration, this knowledge is not a required element of the statute.  The statute is also applicable where a defendant's position of trust, authority or supervision in relation to a victim provides access and opportunity for an offense to occur.  People v. Kaminski, 246 Ill. App. 3d 77, 615 N.E.2d 808 (1993).

In People v. Reynolds, 294 Ill. App. 3d 58, 689 N.E.2d 335 (1997), the court considered whether an elected public official occupied a position of trust, authority or supervision in relation to a minor with whom he had sex.  The court stated that

8

the defendant did not hold such a position simply because he was an elected public official, and pointed out that the position held by the defendant must exist in relation to the victim. Reynolds, 294 Ill. App. 3d 58, 689 N.E.2d 335. The court then found sufficient evidence to prove such a relationship existed in that case because the defendant engaged in acts that established trust in relation to the victim. The focus in that case was not on the victim's knowledge, but on the defendant's conduct which resulted in creating a position of trust, authority or supervision in relation to the victim. As stated in Reynolds, if a defendant occupies a position of trust, authority or supervision at any time that he engages in sexual penetration with a minor, his conduct is prohibited by the statute. Reynolds, 294 Ill. App. 3d 58, 689 N.E.2d 335.

Here, the evidence shows that the defendant acted as a coach for the same high school district where M.C.R. attended classes and participated in cheerleading and girls' track. Regardless of whether M.C.R. knew at the beginning of their sexual relationship that the defendant acted as a coach for her school district, the defendant himself knew that he occupied a position of trust in relation to all the students of that school district, including M.C.R. By assuming the position of assistant track coach, the defendant assumed a position of trust that our society imposes upon those who undertake to teach and mentor our children.

9

In addition, the defendant did not escape criminal conduct under this statute just because he happened to coach the boys' track team, rather than the girls' team. His position presented him with a heightened opportunity to engage in sex with a victim that he knew from the outset was a student at the school, regardless of the victim's knowledge. In Reynolds, the court held that an adult who has sex with a minor cannot shield himself from criminal liability under the statute by showing that the first sex act took place before there was evidence of trust, authority or supervision. Reynolds, 294 Ill. App. 3d 58, 689 N.E.2d 335. Likewise, this defendant cannot shield himself from the statute by showing that the first sex act occurred before the victim knew he was a coach.

We find that a reasonable trier of fact could have found the defendant guilty of criminal sexual assault based upon the evidence presented. Thus, the trial court did not err by denying the defendant's motion for a directed verdict of not guilty.

The defendant's remaining arguments are that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) the court erred by denying his motion for judgment notwithstanding the verdict; and (3) the evidence was insufficient to prove him guilty for the time period of December 2005. These arguments likewise fail. As discussed above, the evidence was sufficient to prove beyond a reasonable doubt that

10

the defendant was guilty of criminal sexual assault.  The defendant acted as an assistant track coach for the school district in 2005 and 2006.  The fact that track season had not yet started in December 2005 is of no consequence here.  The jury's verdict is sufficiently supported by the evidence, and the trial court did not err by denying his motion for judgment notwithstanding the verdict.  Accordingly, the judgment of the Will County circuit court is affirmed.

Affirmed.

SCHMIDT, J. concurs.

JUSTICE LYTTON, specially concurring:

I concur with the majority that the defendant's conviction should be affirmed.  I agree with the majority that the defendant's status as a coach is sufficient, without more, to put him in a position of "trust" under the statute.  However, I concur only because the victim in this case discovered that the defendant was a coach during the period of their assignations; any sexual relations they had after her discovery renders the defendant guilty under the statute.  See 720 ILCS 5/12--13(a)(4) (West 2004).

In its overly broad interpretation of the statute, the majority believes that as long as "the defendant himself knew that he occupied a position of trust in relation to M.C.R. and all students of that school district," his liability under the statute is complete.  By finding that the defendant held a position of

11

trust in relation to "all the students of that school district," the majority has virtually negated the requirement that the offender's position of trust be "in relation to the victim." 720 ILCS 5/12--13(a)(4) (West 2004). In this situation, where defendant's status as a coach is the sole evidence of a "trust" relationship, the victim's knowledge or, at least, awareness of defendant's position is critical.

Though the majority sets out a proper ethical response to the defendant, it does not state the appropriate legal definition required for a criminal sexual assault. In enacting section 12--13(a)(4), the legislature sought to "prevent sex offenses by those whom a child would tend to obey as well as those in whom the child has placed his trust." People v. Secor, 279 Ill. App. 3d 389, 396. It is this trust that makes the child particularly vulnerable and it is the betrayal of the trust that makes the offense unusually devastating. Secor, 279 Ill. App. 3d at 396. Thus, if the status of the defendant is the sole indicator of "trust," then the relationship must be known to the victim. Otherwise, "trust" is a meaningless word, signifying both everything and nothing. Here, no other indicia of "trust, authority or supervision" is alleged, only defendant's status as a coach. Under these circumstances, there can be no criminal liability unless that status is perceived by the victim.

12

In People v. Reynolds, 294 Ill. App. 3d 58, 689 N.E.2d 335 (1997), the court said that although Reynolds was a congressman when he and the victim met, "[t]he language [of the statute] does not suggest that the position of trust *** may result from the role of the offender alone, but that it must exist 'in relation to the victim'". Reynolds, 294 Ill. App. 3d at 66, 689 N.E.2d at 469. The majority would have us believe that trust in relation to the "victim" is the legal equivalent of trust in relation to every student in the school district. One might ask if the defendant is also in a trust relationship to the adjoining school district. How far does criminal liability extend under the statute if no one knows he is a coach.

While I agree with the majority that defendant's coaching position puts him in a position of trust, I believe that the victim's awareness of the defendant's status is an integral part of the defendant's criminal liability. See Secor, 279 Ill. App. 3d at 396. In this case, since the victim acquired knowledge of the defendant's position during their relationship, and the sexual relationship continued after that, the defendant violated the statute.