2025 IL App (2d) 240360
No. 2-24-0360
Opinion filed June 27, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1611 |
| MAGDIEL PEREZ, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Magdiel Perez, was convicted of two counts of criminal sexual assault while holding a position of trust or authority relative to the victim (720 ILCS 5/11-1.20(a)(4) (West 2020)). The trial court sentenced defendant to a four-year term of imprisonment for each count of criminal sexual assault, to be served consecutively. Defendant appeals, arguing that, because the State failed to prove that he held a position of trust or authority at the time of the sexual acts, the evidence was insufficient to prove him guilty beyond a reasonable doubt. Because the evidence was sufficient to show that defendant held a position of trust or authority at the time, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3      The State charged defendant in a nine-count indictment. As pertinent here, counts I and II alleged that defendant committed criminal sexual assault while holding a "position of trust or authority" relative to the victim, Y.A. The charges stemmed from defendant's interactions with Y.A. when she was a 13-year-old student at Tefft Middle School (Tefft), where defendant was employed as a hall monitor. Counts I and II charged defendant with acts of sexual penetration with Y.A. that occurred between May 1, 2022, and August 30, 2022.

¶ 4      Defendant waived his right to a jury trial. A bench trial was held on March 1, 2024. The State's first witness was Luis DeLeon, who worked at Tefft for six years, including in 2022. While employed at Tefft, DeLeon knew Y.A., a seventh-grade student during the 2021-22 school year. Tefft employed defendant as a hall monitor while Y.A. was enrolled there. DeLeon explained that a hall monitor is an hourly employee with the school district who "supervises the hallways, helps out to direct students to classrooms, and make sure that if they are out of the classroom they have a pass, or also helps with arrival, dismissal, and lunch logistics in the building." A hall monitor is not considered a "school professional," a substitute teacher, or a teacher's aide and does not have any classroom duties. A hall monitor's role does not include "giv[ing] counseling to students." However, if a hall monitor "sees a student having problems" or "need[ing] support," the monitor's "role [is] to direct [the student] *** to *** support staff that [can] help out to provide guidance ***." A hall monitor also monitors behavior in classrooms, reports any behavioral concerns to the administration, and "diffuse[s] situations such as fights[.]" Hall monitors are not permitted to have personal relationships with students or contact students outside of the school setting.

¶ 5      DeLeon testified that defendant was placed on administrative leave in the fall of 2022 while Tefft investigated whether he violated school policy by having interactions with a student outside

of school hours. Defendant's employment was ultimately terminated after school administrators determined that he had been communicating with students over smartphone messaging apps.

¶ 6    The State next called David Smith, a criminal investigator with the Kane County Child Advocacy Center (KCCAC). Smith interviewed defendant about his potential criminal activity involving Y.A. The interview was video recorded, and the video was admitted into evidence. During the interview, defendant explained that he was on administrative leave from Tefft for messaging students. He had worked at Tefft as a hall monitor. According to defendant, hall monitors would prevent fights and ensure that students were going to classes. Hall monitors were available if the students "need[ed] someone to talk to." They would escort students who had lost their privileges. Hall monitors would also "overhear things" and advise the administration of "the situation."

¶ 7    Defendant said that, through his role as a hall monitor, he had gotten to know two twin girls who were in seventh grade during the 2021-22 school year. He first got to know one of the twins because she was frequently late to class and he would tell her she was late. He later got to know the twins' friend Y.A., who was also in seventh grade. The girls eventually added defendant to a Facebook Messenger group chat. Defendant began responding to their messages in the group chat shortly before the end of the school year, even though he knew the school had a policy against messaging students. During the 2022 summer break, defendant continued to exchange messages with the girls and occasionally met up with them. Defendant admitted engaging in the alleged acts of sexual penetration with Y.A. during summer break, once in his bedroom and once in the bathroom of the park district facility where he was employed. That fall, he returned to his role as hall monitor at Tefft for one week before he was placed on administrative leave.

¶ 8       The State next called Y.A. She stated that she knew defendant from Tefft, where he worked as a hall monitor. She met him when she was 12 and began communicating with him outside of school (through text messages and messenger apps) during seventh grade. By the end of the school year, she had turned 13. She first visited his home "during school," *i.e.*, she skipped school to see him. Throughout their interactions during the 2022 summer break (after Y.A.'s seventh-grade year), Y.A. spoke to defendant about problems at home, met him at the park to play basketball, and went with him to a 7-Eleven and a mall. Y.A. recounted one of several visits to defendant's home during summer break. During that visit, defendant sexually touched and penetrated Y.A. in his bedroom. After the visit, he drove her to a location near her home, and she walked the rest of the way to her house. Y.A. did not testify to any sexual conduct with defendant that occurred at any time other than during the 2022 summer break.

¶ 9       The State entered into evidence a driving abstract listing defendant's birth date, proving he would have been 25 years old at the time of the sexual conduct.

¶ 10      Once the State rested, defense counsel made a motion for a directed finding on counts I, II, V, and VIII (the State nol-prossed counts III, IV, and IX before trial). Counsel argued, as to counts I, II, and V, that the State failed to prove that defendant was in a position of trust or authority when the sexual conduct occurred. The trial court denied the motion, reasoning in part:

> "Here's what I'm going to find at this particular point. This is what I think. I think defendant was a hall monitor and what his job was was to show authority over the students. I think that is clear. I mean, I'm using a definition in my own mind which I think a hall monitor would do."

However, the court granted defendant a directed finding on counts V and VIII on other grounds. Counts I and II—charging criminal sexual assault—and counts VI and VII—charging aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(ii))—remained.

¶ 11 The defense presented no evidence. In a written decision, the trial court found defendant guilty of counts I and II, as well as counts VI and VII. Counts VI and VII merged into counts I and II. In its decision, the court found that defendant held a position of "trust or authority" relative to Y.A. The court reasoned that (1) defendant's "duties [as a hall monitor] were to patrol the hallways of the school giving assistance, aid, and control to the students of the school while traversing the hallways"; (2) as a hall monitor, defendant was "authorized to control and supervise [Y.A.'s] movements in the school, inquire as to her destinations or purposes," and "assist[ ] [Y.A.] and other students with questions and information"; (3) defendant "at times would discuss with Y.A. her problems and issues"; and (4) defendant "could *** report [Y.A.'s] actions to school authorities."

¶ 12 Defense counsel filed a motion for a new trial, asserting that the trial court erred when it denied defendant's motion for a directed finding on the criminal sexual assault charges. At the hearing on the motion for a new trial, defense counsel argued that defendant never "used his position of trust or authority to exert undue influence over [Y.A.]" or "threatened or coerced or used his authority to get her to provide sexual favors and if *** she withheld that he would discipline her. The trial court denied the motion and sentenced defendant to a four-year term of imprisonment for each count of criminal sexual assault, to be served consecutively.

¶ 13                                  II. ANALYSIS

¶ 14 On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of criminal sexual assault because the evidence was insufficient to establish that, when he committed

the sexual acts, he held a position of trust or authority relative to Y.A. First, defendant argues that he was not working as a hall monitor—and thus was not in a position of authority—during summer break, when the alleged offenses occurred. Second, he argues that any "subjective feelings of trust" Y.A. may have felt toward him were insufficient to establish that he held a position of trust.

¶ 15    When presented with a challenge to the sufficiency of the evidence, this court does not attempt to retry the defendant by independently assessing whether the evidence at trial established guilt beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992). Therefore, we seek to determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. We will not set aside the conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

¶ 16    Section 11-1.20(a)(4) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-1.20(a)(4) (West 2020)) provides:

> "(a) A person commits criminal sexual assault if that person commits an act of sexual penetration and:
>
> * * *
>
> (4) is 17 years of age or over and holds a position of trust, authority, or supervision in relation to the victim, and the victim is at least 13 years of age but under 18 years of age."

¶ 17    On appeal, defendant does not dispute that he and Y.A. met the age elements of the offenses or that he committed acts of sexual penetration with Y.A. He argues only that the State failed to establish the "position" element of the offenses. Under section 11-1.20(a)(4), the State may convict a defendant by proving he "held a position of trust *or* authority *or* supervision when he committed the sexual conduct"—any one of those three alternatives is sufficient. (Emphases in original.) *People v. Miki*, 2020 IL App (2d) 190862, ¶ 56. It is the responsibility of the fact finder to determine whether the defendant held one of these positions relative to the victim. *People v. Carter*, 2022 IL App (1st) 210261, ¶ 62.

¶ 18    Here, defendant was charged with committing the sexual conduct while holding a "position of trust or authority" relative to Y.A. In its written decision, the trial court found that defendant held a "position of trust *or* authority" relative to Y.A. (Emphasis added.) Defendant argues that the State failed to prove that he held *either* position relative to Y.A. We hold that the State proved that defendant's position relative to Y.A. was of *both* trust *and* authority. Because the State never charged defendant with holding a position of *supervision* relative to Y.A., we do not consider that element.

¶ 19    Words used in a statute are presumed to have their ordinary, popularly understood meanings. *People v. Secor*, 279 Ill. App. 3d 389, 396 (1996). Courts have noted that "[a]uthority" is defined as "[t]he power to command, enforce laws, exact obedience, determine, or judge," and that "trust" is defined as "[c]onfidence in the integrity, ability, character, and truth of a person ***[;] [s]omething committed into the care of another." (Internal quotation marks omitted.) *Id.* By enacting a statute specific to an offender who "holds a position of trust, authority, or supervision in relation to [a] victim *** [who] is at least 13 years of age but under 18 years of age" (720 ILCS 5/11-1.20(a)(4) (West 2020)), "the legislature sought to prevent sex offenses by those whom a

child would tend to obey, such as a teacher or coach, as well as those in whom the child has placed his trust." *Secor*, 279 Ill. App. 3d at 396.

¶ 20　First, we hold that defendant, as a hall monitor, held a position of authority relative to Y.A. Defendant acknowledges that he arguably held a position of authority relative to Y.A. during the school year. However, he contends that he was not in a position of authority during summer break, when the charged offenses occurred. We disagree.

¶ 21　In *People v. Breshears*, 2023 IL App (4th) 220947, ¶¶ 1, 3, the defendant appealed his convictions of criminal sexual assault based on his holding a position of trust, authority, or supervision relative to the 17-year-old victim. The evidence at trial was that the defendant owned a martial arts gym where the victim took classes taught by the defendant. *Id.* ¶ 7. The defendant argued on appeal that the State failed to prove the "position" element of the offenses. *Id.* ¶ 35. One of his arguments was that he was not in a position of authority at the time of the sexual conduct that occurred during the onset of the COVID-19 pandemic, when he closed his gym to the public. *Id.* ¶¶ 45-46. The court rejected the argument, stating:

> "a rational jury could have determined that the nature of [the] defendant's relationship with [the victim] did not change merely because COVID-19 temporarily halted formal instruction. By analogy, it would be absurd to conclude that a teacher may not be convicted of a crime for continuing a sexual relationship with a 17-year-old student during a school break." *Id.* ¶ 46.

¶ 22　Here, defendant argues that, because he was merely an hourly employee at the school, his authority over Y.A. "was limited to the halls of the school, during the school year." But, consistent with the court's observation in *Breshears*, a rational fact finder could conclude that the nature of defendant's relationship with Y.A. did not change the instant they stepped off school grounds or

the moment summer break began. As a hall monitor, defendant had the authority to make sure students were not out of class without a hall pass and to report students for misbehavior. Notably, Y.A. testified that she skipped school to visit defendant's home for the first time. From these facts, a rational fact finder could conclude that defendant's authority relative to Y.A. persisted during summer break because he retained the potential to act for Y.A.'s benefit or detriment once school resumed. Thus, it would be reasonable to conclude that defendant's authority continued to affect the nature of his relationship with Y.A. even when classes were not in session.

¶ 23    We also hold that the State established that defendant held a position of trust relative to Y.A. Defendant argues that, although Y.A. may have trusted him, the evidence failed to prove that he was in a *position* of trust as required by section 11-1.20(a)(4) of the Code. Defendant asserts that if a child's "subjective feelings of trust" toward an adult were sufficient to establish that that adult holds a position of trust, "nearly every adult would occupy such a position over nearly every child, as children generally look to adults as authority figures."

¶ 24    As evidence that the legislature did not intend such sweeping liability, defendant points first to section 5-5-3.2(a)(14) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a)(14) (West 2020)), which, for certain crimes, makes it an aggravating factor that the defendant "held a position of trust or supervision *such as, but not limited to*, family member[,] *** teacher, scout leader, baby sitter, or day care worker ***." (Emphasis added.) "These positions," defendant notes, "are ones where parents and society generally entrust a child's care and well-being to a particular individual." As defendant fails to acknowledge, however, the list in section 5-5-3.2(a)(14) is expressly not meant to be exclusive.

¶ 25    More importantly, courts construing section 11-1.20(a)(4) of the Code have made clear that the legislature appropriately left for the fact finder to determine whether, under a given set of facts,

an individual occupies a "position of trust" relative to the victim. See, *e.g.*, *Secor*, 279 Ill. App. 3d at 396. In rejecting a due process argument that section 11-1.20(a)(4) is unconstitutionally vague, the *Secor* court said that "[d]ue process does not require a 'laundry list' of all such positions of trust, authority or supervision; where enumeration of all such positions is impractical, the legislature may reasonably choose sufficiently broad language to encompass such situations." *Id.* The legislature aimed to punish one whose position or status, whatever it might be, "provide[d] access and opportunity for [the] offense to occur." *People v. Grocesley*, 384 Ill. App. 3d 682, 686 (2008) (citing *People v. Kaminski*, 246 Ill. App. 3d 77 (1993)). A hall monitor's daily proximity to and interaction with students, and duty to aid them, lent defendant an appearance of trustworthiness. Thus, a fact finder would not have to rely on Y.A.'s mere "subjective feelings of trust" to reasonably find that defendant held a position of trust relative to Y.A.

¶ 26    Defendant counters by citing *Miki* and *Secor* to show that "courts have *** tended to find a defendant occupied a position of trust in situations where *someone else* entrusted a child to the defendant's care." (Emphasis added.)

¶ 27    In *Miki*, we held that the defendant established a position of trust as the victim's soccer coach and employer. *Miki*, 2020 IL App (2d) 190862, ¶¶ 57-58. Moreover, that trust relationship continued after the defendant no longer coached or employed the victim. *Id.* Our conclusion relied on evidence that both the victim and the victim's family had shown considerable trust in the defendant's integrity and character. *Id.* ¶¶ 58-59. Because the victim's parents had allowed her to ride alone with the defendant to soccer games and client meetings, the court concluded that the victim would have been cognizant of the trust her parents had placed in the defendant, which in turn would have reinforced her own trust in the defendant. *Id.* ¶ 59.

¶ 28 In *Secor*, the victim was an overnight guest of the defendant's son at the time of the criminal sexual assault. *Secor*, 279 Ill. App. 3d at 391. The court found that the defendant held a position of trust, in part because the evidence suggested that mutual trust existed between the victim's and the defendant's families. *Id.* at 394.

¶ 29 Defendant attempts to distinguish this case from *Miki* and *Secor* by asserting that there was no evidence to suggest that Y.A.'s family had entrusted her to his care or that her family even knew she was with him. To support this assertion, defendant notes that Y.A. testified that he dropped her off some distance from her home so that she would walk the rest of the way. We disagree that defendant's concealment of the relationship placed him beyond the scope of section 11-1.20(a)(4). Although a position of trust may be established when a victim's family trusted the defendant, the statute does not require it.

¶ 30 Of guidance here is *Grocesley*, where the defendant "acted as an assistant coach for [the Joliet High School District (district)] during the 2005 and 2006 track seasons," although he was not a paid staff member, an official volunteer, or certified by the State of Illinois as an assistant coach. *Grocesley*, 384 Ill. App. 3d at 684-85. The victim was a junior at one of the two high schools in the district. *Id.* at 683. In October 2005, the defendant met the victim at a district high school football game where she was cheerleading. *Id.* They spoke on two subsequent occasions at district basketball games. *Id.* In December 2005, they began a sexual relationship. *Id.* In January or February 2006, the victim saw the defendant speaking to track coaches at a district high school track practice. *Id.* The victim and the defendant subsequently had sex one additional time before he told her that he could not see her anymore because he was trying to straighten out his life and become a track coach. *Id.*

¶ 31    On appeal from his conviction of criminal sexual assault under section 11-1.20(a)(4) of the Code, the defendant argued that the evidence was insufficient to show that he held a position of trust, supervision, or authority relative to the victim, because (1) he was not an official coach and (2) the victim did not know he was a coach when their relationship began. *Id.* at 685. The court rejected both arguments. *Id.* at 685-87. The court rejected the latter argument by noting that section 11-1.20(a)(4) "does not require that the victim possess knowledge of the perpetrator's position of trust, authority or supervision in relation to her." *Id.* at 686. The court noted that, although a victim's knowledge of the defendant's position can influence the victim to engage in sexual conduct, the statute applies generally where "a defendant's position of trust, authority or supervision in relation to a victim provides access and opportunity for an offense to occur." *Id.* (citing *Kaminski*, 246 Ill. App. 3d 77). The court explained that the defendant "occupied a position of trust in relation to all the students of that school district, including [the victim]. By assuming the position of assistant track coach, the defendant assumed a position of trust that our society imposes upon those who undertake to teach and mentor our children." *Id.* at 686-87.

¶ 32    Here, in contrast to *Grocesley*, Y.A. was aware at the outset of their relationship that defendant was a hall monitor. That role, as we have explained, gave Y.A. sufficient reason to trust him—and in turn was sufficient for a fact finder to conclude that defendant occupied a position of trust. Even if Y.A.'s family did not know that defendant worked at her school, a rational fact finder could determine that her family would have presumed that any hall monitor employed by Tefft could be trusted with the welfare of their child. Further, applying the comments in *Grocesley*, we note that both the school's administration and society at large would have trusted defendant with the welfare of all the students at Tefft, including Y.A. Because of the implicit trust placed in

defendant by Y.A.'s family, the school administration, and society at large, Y.A. had reason to believe in defendant's integrity and character, and to trust him herself.

¶ 33    Based on the evidence presented, it would be reasonable for a trier of fact to conclude that defendant was in a position of trust or authority relative to Y.A. Therefore, we have no basis for reversing defendant's convictions of criminal sexual assault.

¶ 34                                III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 36    Affirmed.

*People v. Perez*, 2025 IL App (2d) 240360

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 22-CF-1611; the Hon. John A. Barsanti, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Patrick Hogan, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Miles J. Keleher, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |