NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250152-U

NO. 4-25-0152

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 17, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| THOMAS HAROLD FOLKS, | ) | No. 24CF164 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding (1) the trial court did not commit plain error when it considered as an aggravating favor at sentencing that defendant held a position of trust in relation to the victim and (2) defense counsel was not ineffective for failing to challenge the court's consideration of the position-of-trust aggravating factor at sentencing.

¶ 2     Defendant, Thomas Harold Folks, appeals from his aggregate 74-year prison sentence following his plea of guilty to two counts of predatory criminal sexual assault of a child, Class X felonies (720 ILCS 5/12-14.1(a)(1) (West 2006)). On appeal, defendant argues the trial court erred when it considered an improper aggravating factor at sentencing and he is therefore entitled to a new sentencing hearing. The State responds defendant forfeited this argument by failing to contemporaneously object and raise the issue in a timely post-sentencing motion. The State further maintains that even if this court were to excuse defendant's forfeiture, the trial court did not commit plain error. Defendant asserts that if this issue is forfeited, it is nonetheless

reviewable under the first prong of the plain error doctrine. Alternatively, defendant contends his trial counsel was ineffective for failing to preserve the issue of the trial court's consideration of an improper aggravating factor at sentencing.

¶ 3 We conclude (1) the trial court did not commit plain error when it considered in aggravation at sentencing that defendant held a position of trust in relation to the victim and (2) defense counsel was not ineffective for failing to preserve this alleged error for appellate review. Accordingly, we affirm the court's judgment.

¶ 4 I. BACKGROUND

¶ 5 In February 2024, a grand jury charged defendant by indictment with aggravated criminal sexual assault, a Class X felony (720 ILCS5/12-13(a)(4) (West 2002)) (count I), and four counts of predatory criminal sexual assault of a child, Class X felonies (720 ILCS 5/12-14.1(a)(1) (West 2006)) (counts II-V). As relevant to this appeal, counts II and III both alleged defendant, who was over the age of 17, knowingly committed an act of sexual penetration between his finger and the vagina of A.H., who was under the age of 13.

¶ 6 A. Guilty Plea

¶ 7 In August 2024, defendant entered a partially negotiated plea agreement with the State. In exchange for defendant's guilty plea to counts II and III, the State agreed to dismiss counts I, IV, and V. According to the written agreement, defendant's plea was "open," meaning there was no agreement between the parties as to the sentence. At the plea hearing, the State proffered the following factual basis in support of the plea:

"At trial, first the State would produce one Donna Coit, C-o-i-t. Donna Coit would testify that she was the current owner of 605 Pine Street, lot 21, in Normal, Illinois. She would testify that her stepbrother was previously the owner but was

- 2 -

currently incarcerated and allowing his son to live at that property, his son being the defendant.

Donna Coit would testify that the defendant lived at the property, the trailer. She would testify that on May 1st of 2023, she had started the eviction process against the defendant. While she was on the phone with Metcom at the trailer, she attempted to find a piece of paper to write down a number. When she did so, she discovered a spiral notebook. She looked inside the spiral notebook. She identified the defendant's handwriting in the spiral notebook, and had observed and would testify further that she previously observed the defendant holding the spiral notebook. She would further testify that upon looking at several of the passages inside the notebook[,] [s]he contacted the Normal Police Department. One of the notes that Donna Coit read and would testify to stated: 'I have molested underage girls only, and never fucked, just molested. The first girl was A.H., my dad's girlfriend's daughter. She was about ten years of age. I stuck my hand up her dress and played with her pussy. I tasted it. I wanted more.' There were multiple notes that Ms. Coit read that were similar in nature to both A.H., as well as multiple other individuals.

Further, the State would produce Detective Mitchell Wilson with the Normal Police Department. He would testify to following up with the identifiable victim inside the spiral notebook, A.H. The State would produce A.H., who is now an adult. A.H. would testify that her mother and the defendant's dad were in a relationship when she was between the ages of seven years of age in 2003, and that they dated until she was 12 years of age in 2008.

A.H. would state that around the age of seven years of age, the defendant first assaulted her. She stated that when her and her mom would come to the town of Normal to visit, she would stay in the defendant's room and that he would sleep on the couch. She stated that during the day he would come into his room to play video games. She stated that he began touching her at around the age of seven.

She stated that he would touch her thighs initially, and then he put his hands in her shorts. This would occurred [*sic*] in the room. She stated the first time this happened she was seven. As she became older she realized this was—she was more aware of what was happening. She began to tell him to stop. When she was approximately 10 years of age, she began telling him repeatedly to stop, and that he pushed her hands away. When she would try—he would force open her thighs and force himself. He would digitally penetrate her with his hand—with his finger. This occurred between 10 to 15 times, all during the duration of the defendant's father's relationship with her mother.

Finally, the State would produce one [K.L.] [K.L.] was another name mentioned in the spiral notebook. The State would produce her to show that a potential act was committed against her, therefore verifying the authenticity of the spiral notebook to the defendant.

Finally, A.H. would further testify to her date of birth, and that she was between the ages of 7 and 10 when all these sexual assaults occurred."

¶ 8 The trial court accepted defendant's guilty plea as knowing and voluntary and set the matter for sentencing.

¶ 9                    B. Sentencing Hearing

¶ 10        In October 2024, the trial court conducted defendant's sentencing hearing.

¶ 11        As evidence in aggravation, the State called A.H. to read aloud her victim impact statement. As part of her statement, A.H., who was now an adult, explained she was a young child when her mother began dating defendant's father. Their parents were in a long-distance relationship. During her visits with her mother to visit defendant's father in Normal, A.H. would sleep in defendant's room, where the assaults occurred. A.H.'s statement detailed how the assaults negatively impacted her mental health, romantic and familial relationships, and self-esteem. Specifically, A.H. commented,

> "My first sexual experiences were at the hands of someone who was supposed to be like a brother to me. Someone who was a decade older than me and preyed on my innocence and proximity. I didn't yet know who was right from wrong sexually. I was only a child. I'd never even kissed a boy."

¶ 12        The State next called Donna Coit, who testified defendant was her stepnephew, meaning his father was her stepbrother. Coit discovered the journal containing defendant's alleged confession to the acts charged in this case, which also contained alleged confessions related to four other victims. The trial court allowed the admission of the journal into evidence.

¶ 13        As evidence in mitigation, the trial court allowed the admission of defendant's exhibit No. 1, which was an inmate program participation summary from the McLean County jail indicating defendant had worked 71 days as a hall worker and 20 days as a pod worker. The court also admitted the presentence investigation report (PSI) with no objection.

¶ 14        During arguments, the State recommended a sentence of 120 years in prison. The State argued several statutory aggravating factors applied, including that defendant's actions caused serious harm, defendant's criminal history contained a felony and a violent offense, a longer

sentence was necessary for deterrence, and defendant held a position of trust over A.H. Regarding the last factor, the State argued,

> "Next, we look to factor 14, [(730 ILCS 5/5-5-3.2(a)(14) (West 2024))], which is that the defendant held a position of trust or supervision, such as, but not limited to, a family member. It goes on to describe in the statute baby-sitter in relation to a victim under 18 years of age. You heard from [A.H.] She talked about the fact he was like an older brother to her and he still did this to her, bringing her to his room and doing this. He was older. He should have known better. He should have never put this child in this situation. So, again, I believe that's another strong factor in aggravation."

¶ 15    In mitigation, defense counsel argued the minimum sentence of 12 years would be sufficiently punitive in this case. Defense counsel emphasized defendant's good behavior and work while in the county jail, his age, his lack of a significant criminal history, and his acceptance of responsibility for his actions by pleading guilty.

¶ 16    The trial court sentenced defendant to 37 years in prison on each count, to be served consecutively, resulting in an aggregate sentence of 74 years. The court stated it considered the evidence in aggravation and mitigation, the PSI, the factual basis, the history and character of defendant, and the applicable statutory aggravating and mitigating factors. When discussing the applicable statutory aggravating factors, the court noted defendant's criminal history was somewhat aggravating and a longer sentence was necessary to deter others from committing similar crimes. Additionally, the court found as follows:

> "You were in a position of trust over [A.H.] You got her parent to trust you and you took that *** from her, from [A.H.] You *** took that trust from her not

just in that moment but the ongoing trust. Lots of people are able to go through their lives trusting people in various capacities. And the impact that you had on her has extended beyond just that moment and her worrying about what someone might do to her. You've taken away her ability to trust people that she loves around others. Your actions have had a substantial impact."

In mitigation, the court found defendant had taken some accountability for his actions by pleading guilty and avoiding trial, which could have had an additional negative impact on A.H. At the conclusion of the hearing, the court inquired of the parties if there was anything else that needed to be addressed, and both parties responded there was not.

¶ 17                    C. Postsentencing Motion

¶ 18        In November 2024, defendant filed a motion to reconsider his sentence, arguing an aggregate sentence of 74 years in prison was excessive. At the January 2025 hearing on the motion, defense counsel argued the 74-year sentence was excessive given defendant's lack of an extensive criminal history, acceptance of responsibility for his actions, and good behavior in the county jail prior to sentencing. Defense counsel emphasized that a 12-year sentence would still be a significant sentence, while also promoting the objectives of deterrence and rehabilitation. The State responded the trial court properly weighed and considered the evidence and applicable sentencing factors and defendant had not shown that granting his motion to reconsider was necessary to correct a manifest injustice. The court denied the motion, reiterating its reasoning from the sentencing hearing and acknowledging defendant took responsibility for his actions by pleading guilty.

¶ 19        This appeal followed.

¶ 20                          II. ANALYSIS

¶ 21        On appeal, defendant argues he is entitled to a new sentencing hearing because the

trial court improperly found, in aggravation, defendant held a position of trust over A.H. The State responds defendant forfeited this issue by failing to contemporaneously object and raise the issue in a timely postsentencing motion. Further, the State asserts that even if this court excused defendant's forfeiture, he has not shown the trial court committed plain error. Defendant contends that if this court concludes the issue was not preserved, it is nonetheless reviewable under the plain error doctrine. Alternatively, defendant argues his trial counsel was ineffective for failing to preserve this meritorious issue for review.

¶ 22    We conclude no plain error occurred and trial counsel was not ineffective for failing to challenge the trial court's consideration of the position-of-trust aggravating factor at sentencing. Accordingly, we affirm the court's judgment.

¶ 23                                A. Forfeiture

¶ 24    We first address the State's contention defendant has forfeited his claim the trial court considered an improper aggravating factor at sentencing by failing to contemporaneously object and raise the error in his motion to reconsider his sentence. Defendant, relying on *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 51, claims he preserved this issue by arguing, in his postsentencing motion, that his sentence was excessive.

¶ 25    "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). In *Valadovinos*, the defendant was sentenced to 43 years in prison for attempted first degree murder while personally discharging a firearm. *Valadovinos*, 2014 IL App (1st) 130076, ¶ 50. On appeal, the defendant argued, *inter alia*, his sentence was excessive because the trial court improperly considered factors in aggravation at sentencing that were inherent to the offense. *Id.* ¶ 45. The State asserted this argument was

forfeited because the defendant's motion to reconsider merely argued the sentence was unfair and excessive. *Id.* ¶ 51. The First District disagreed with the State, concluding, "Although [the defendant']s motion did not explicitly raise the issue of improper aggravating evidence, the motion did touch on the issue of an unfair and excessive sentence, and therefore we find that the issue has been preserved for appeal." *Id.* Like the defendant in *Valadovinos*, defendant in this case asserts he preserved his claim the trial court considered an improper aggravating factor when he raised his general excessive sentence claim in his motion to reconsider.

¶ 26        In reaching the conclusion the defendant's sentencing claim was preserved in *Valadovinos*, the First District relied on our supreme court's decision in *People v. Heider*, 231 Ill. 2d 1 (2008). There, the defendant was sentenced to 10 years in prison following his plea of guilty to one count of predatory criminal sexual assault. *Id.* at 3. On appeal to the supreme court, the defendant argued the trial court improperly relied upon his mental disability as a "significant" factor in aggravation at sentencing based on section 5-5-3.1(a)(13) of the Unified Code of Corrections (Unified Code) (730 ILCS 5-5-3.1(a)(13) (West 2002)), which listed mental disability as a factor in *mitigation*. *Id.* at 14. The State argued the defendant forfeited this argument by failing to include it in his postsentencing motion, which merely argued his sentence was excessive given his "diminished mental functioning." *Id.* The supreme court found the issue was sufficiently preserved, reasoning as follows:

> "After reviewing the record, we are persuaded that defendant has preserved for review the claim that his mental impairment was improperly considered as an aggravating factor. There are several reasons for requiring that an objection be made first at trial in order to preserve an issue for appeal. One is that this allows the trial court an opportunity to review a defendant's claim of sentencing error and save

- 9 -

the delay and expense inherent in appeal if the claim is meritorious. [Citation.] A second reason for this requirement is to prevent a litigant from asserting on appeal an objection different from the one he advanced below. Our review of the record leaves us satisfied that these purposes have been met. The trial court had an opportunity to review defendant's claim, and defendant is not asserting in this court a completely different objection from the one he raised below. At the motion hearing, defense counsel expressly referred to the 'double-edged' nature of mental [disability], argued that any aggravating aspects of mental [disability] should not apply to defendant, and urged the trial court to reduce defendant's sentence. In circumstances such as these, where the trial court clearly had an opportunity to review the same essential claim that was later raised on appeal, this court has held that there was no forfeiture." *Id.* at 18.

¶ 27　　　　We conclude defendant forfeited this issue by failing to contemporaneously object at the sentencing hearing *and* include the issue in his motion to reconsider. As noted *supra*, a defendant intending to preserve an issue for appellate review is required to do *both* (see *Hillier*, 237 Ill. 2d at 544), and the record shows defense counsel lodged no objection to the trial court's consideration of the position-of-trust aggravating factor at sentencing. Furthermore, defendant did not sufficiently raise the issue in his motion to reconsider. The grounds for defendant's motion, in their entirety, were "[t]hat given the facts and circumstances, the sentences are excessive." Combined with the arguments presented at the hearing on the motion, there was no opportunity for the trial court to consider the substance of the issue now before this court—*i.e.*, whether the court properly found defendant was in a position of trust over A.H. or otherwise considered an improper factor in aggravation. See *Heider*, 231 Ill. 2d at 18 (finding issue was preserved where

trial court had the opportunity to review the substance of the claimed sentencing error). Accordingly, defendant failed to preserve his sentencing argument for appellate review.

¶ 28                                    B. Plain Error

¶ 29        Defendant contends that to the extent his sentencing claim was not preserved, this court should nonetheless review it for plain error. Specifically, defendant contends the evidence presented at sentencing was closely balanced, and thus, the court's alleged error " 'threatened to tip the scales of justice against the defendant,' " (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). The State responds no error occurred, and moreover, the evidence at sentencing was not closely balanced. We conclude no clear or obvious error occurred and defendant therefore cannot establish plain error.

¶ 30        "The plain error rule is a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default." *People v. Moon*, 2022 IL 125959, ¶ 19; see Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). The plain error rule is not a "general savings clause" (*People v. Precup*, 73 Ill. 2d 7, 16 (1978)), but instead it provides "a narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process." *Moon*, 2022 IL 125959, ¶ 21.

¶ 31        Under the plain error rule, the reviewing court may review a forfeited error under the following circumstances:

> "(1) when a clear or obvious error occurred and the evidence is so closely balanced
> that the error alone threatened to tip the scales of justice against the defendant,
> regardless of the seriousness of the error, or (2) when a clear or obvious error
> occurred and the error is so serious that it affected the fairness of the defendant's

trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* ¶ 20.

Under either prong, the defendant bears the burden of persuading the court to excuse the forfeiture. *Id.*

¶ 32　　　　The first step in the plain error analysis is to determine whether a clear or obvious error occurred. *Id.* ¶ 22. Accordingly, we must initially assess whether the trial court committed a clear or obvious error when it considered, as an aggravating factor at sentencing, that defendant held a position of trust, authority, or supervision over A.H.

¶ 33　　　　Generally, the trial court has broad discretion in fashioning an appropriate sentence in criminal cases. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 64. However, the question of whether a court relied on an improper factor at sentencing is a question of law that we review *de novo*. *Id*. at ¶ 65. "[A] trial judge may not consider an improper factor in aggravation when sentencing a defendant because such consideration clearly affects that defendant's fundamental right to liberty." *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18. On appeal, the defendant bears the burden of demonstrating the sentence was based on an improper factor, and this court will not reverse the court's sentencing decision unless it is evident that the court relied on the improper factor. *Hibbler*, 2019 IL App (4th) 160897. "When we review a sentence for an alleged error based upon the consideration of an improper factor in aggravation, we consider the record as a whole and do not focus merely on a few words or statements from the trial judge." *Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 34　　　　Section 5-5-3.2(a) of the Unified Code (730 ILCS 5/5-5-3.2(a) (West 2024)) lists the factors the trial court may consider in aggravation when imposing sentence. Subsection (a)(14) provides that the court may consider in aggravation that a defendant held a position of "trust or

supervision" in relation to a victim under the age of 18 where the defendant committed one of several enumerated sex offenses. *Id.* § 5-5-3.2(a)(14). These terms are used disjunctively, meaning the court may consider the factor if the defendant held a position of trust *or* supervision over the minor. See *People v. Breshears*, 2023 IL App (4th) 220947, ¶ 36 (interpreting analogous criminal statute). The statute indicates a position of trust or supervision includes, but is not limited to, a "family member as defined in Section 11-0.1 of the Criminal Code of 2012 [(Criminal Code)], teacher, scout leader, baby sitter, or day care worker." 730 ILCS 5/5-5-3.2(a)(14) (West 2024). In turn, section 11-0.1 of the Criminal Code (720 ILCS 5/11-0.1 (West 2024)) defines "family member" as "a parent, grandparent, child, aunt, uncle, great-aunt, or great-uncle," and "if the victim is a child under 18 years of age, an accused who has resided in the household with the child continuously for at least 6 months."

¶ 35     The Unified Code does not define the terms "trust" or "supervision" in the sentencing context. Illinois courts generally interpret these terms in the sentencing context consistently with how they are used in the Criminal Code (*e.g.*, 720 ILCS 5/11-1.60(f) (West 2024) ("A person commits aggravated criminal sexual abuse if that person commits an act of sexual conduct with a victim who is but under 18 years of age and the person is 17 years of age or over and *holds a position of trust, authority, or supervision in relation to the victim*.") (Emphasis added.)). See *People v. Perez*, 2025 IL App (2d) 240360, ¶ 24; see also *People v. Kaminski*, 246 Ill. App 3d 77, 80 (1993) (noting the terms are used analogously in the Unified Code and Criminal Code). Accordingly, in determining whether a defendant held a position of trust or supervision over the minor victim, we use their generally accepted dictionary definitions. *People v. Miki*, 2020 IL App (2d) 190862, ¶ 55.

"The term 'trust' is interpreted to mean confidence in the integrity, ability,

character, and truth of a person. [Citation.] In using the word 'trust,' the legislature intended to prevent sex offenses by those in whom a child would place her trust. [Citation.] This trust makes the child particularly vulnerable, and betrayal of that trust makes the offense particularly devastating." *Id.*

Furthermore, while "[t]he ability of individuals who hold positions of supervision to exert undue influence over a child is certainly a relevant factor," the Second District has also recognized that "it is the position of 'trust, authority or supervision' which often provides a heightened opportunity for the sexual assault to occur." *Kaminski*, 246 Ill. App. 3d at 81.

¶ 36        Illinois courts may also consider whether the extent of the familiarity between the victim and the defendant arose from circumstances likely to generate mutual trust. *People v. Secor*, 279 Ill. App. 3d 389, 394 (1996). For example, in *Secor*, the defendant was the father of the 14-year-old victim's friend. *Id.* at 391. The victim testified at trial that the defendant sexually assaulted him during a sleepover with his friend at the defendant's home. *Id.* The victim had been to the defendant's home "[a] lot" and had previously spent the night there "a couple" of times. *Id.* Additionally, the victim's mother testified she had known the defendant's family for over 10 years and had also hosted the defendant's children for sleepovers at her own home. *Id.* at 392. On appeal from his conviction for criminal sexual assault, the defendant argued the State failed to prove he held a position of trust, authority, or supervision over the victim as required by the statute. *Id.* The Third District rejected this argument, concluding there was strong evidence of trust or supervision. *Id.* at 394. Although the Third District primarily relied on the defendant's supervisory role, it could not "ignore the fact that the families of the defendant and the victim had been friends for 10 years, a circumstance likely to generate mutual trust. This trust was demonstrated on the occasions when the children slept at each others' houses." *Id.* Additionally, the victim was "not a stranger to the

defendant; he was the child of neighbors of long standing and a friend of his son." *Id.* The Third District found additional support in the circumstances of the offense, noting the defendant "committed the sexual acts while [the victim's] brother and the defendant's own son slept on the floor a few feet away" and "[i]t would not have been unreasonable for the jury to infer that [the] defendant was relying on his position of trust, authority or supervision as assurance that [the] victim] would not cry out." *Id.*

¶ 37    We first note the State's argument at sentencing that defendant held a position of trust or supervision over defendant was not persuasive and was partially unsupported by the record. The State argued the trial court should apply this aggravating factor because defendant was "older" and "should have known better," and it implied that he was a babysitter to A.H. On the contrary, there was no evidence presented at the guilty plea or sentencing hearings that defendant ever babysat A.H. or was otherwise responsible for her care or supervision. Furthermore, it is unclear how the facts that defendant was merely "older" and "should have known better" would automatically warrant a finding defendant was in a position of trust or supervision over A.H. From our review of the record, it clearly does not support a finding defendant held a position of supervision over A.H. or that he was a family member as defined by section 11-0.1 of the Criminal Code (720 ILCS 5/11-0.1 (West 2024)). However, this court may affirm on any basis supported by the record. *People v. Rebecca*, 2012 IL App (2d) 091259, ¶ 60. As we will explain below, the record supports the trial court's finding that defendant held a position of trust over A.H.

¶ 38    Here, the trial court correctly concluded defendant held a position of trust over A.H. and, therefore, it did not err when it considered it as an aggravating factor at sentencing. The State's factual basis established that A.H.'s mother and defendant's father were in a long-distance relationship for five years. Although defendant only pleaded guilty to two counts of predatory

criminal sexual assault occurring in 2006—two and a half years into the parents' relationship—the factual basis indicated defendant assaulted A.H. between 10 and 15 times over this period. Furthermore, the factual basis showed the assaults occurred in defendant's bedroom, where A.H.'s mother had entrusted A.H. to sleep during their visits to Normal. Defendant would enter his bedroom during A.H.'s visits, ostensibly to play video games. A logical inference from these facts, which the trial court noted in its sentencing decision, was that A.H.'s mother trusted defendant to be a safe person with whom A.H. could spend time alone in his bedroom. In her victim impact statement, A.H. commented that defendant was supposed to be "like a brother to her" and preyed on her proximity and innocence. But for A.H.'s mother's decision to place her trust in defendant to act as a sort of adult stepbrother to A.H. during their visits to Normal, defendant would not have had the access and "heightened opportunity" to sexually assault A.H. See *Kaminski*, 246 Ill. App. 3d at 81. Stated differently, if A.H.'s mother did not trust defendant around A.H., she would not have agreed to visits there. Furthermore, A.H. commented defendant's abuse was her first sexual experience and she did not yet understand "who was right from wrong sexually," which showed she relied on defendant's integrity and character to know this difference and guide her appropriately. Like the relationship between the defendant's and victim's families in *Secor*, A.H.'s and defendant's parents' long-distance relationship provided the opportunity for A.H. to be a regular overnight guest at defendant's home. This familiarity and proximity over a five-year period created a circumstance "likely to generate mutual trust" between A.H.'s mother and defendant. *Secor*, 279 Ill. App. 3d at 394. Thus, it was reasonable for A. H. to presume defendant was a person of integrity and good character because of his familial relationship to his father, who was dating her mother. In sum, A.H.'s subjective feelings of trust toward defendant, along with her mother's trust in bringing A.H. to defendant's home for overnight visits, were sufficient to support the

court's determination defendant held a position of trust in relation to A.H.

¶ 39     Because we conclude no clear or obvious error occurred, we need not consider whether the evidence presented at sentencing was closely balanced. See *Hillier*, 237 Ill. 2d at 549 ("Defendant cannot meet his burden of persuasion on either prong of the plain-error rule because *** the face of the record shows no error, let alone a clear and obvious one.").

¶ 40                    C. Ineffective Assistance of Counsel

¶ 41     Defendant alternatively asserts his trial counsel was ineffective for failing to preserve for appeal his argument the trial court considered an improper aggravating factor at sentencing. Specifically, defendant argues counsel's failure to object and raise the issue in his motion to reconsider was objectively unreasonable and, but for this error, there is a reasonable probability his sentence would have been reduced at the motion hearing. Furthermore, defendant's argument continues, he was prejudiced by this failure because it resulted in the forfeiture of a meritorious claim for appellate review. The State responds counsel's performance was not deficient and he suffered no prejudice.

¶ 42     To prevail on a claim of ineffective assistance of counsel, the defendant must establish both prongs of the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, the defendant must show that both (1) his counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional errors, there is a reasonably probability the result of the proceedings would have been different. *Id.* at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "If either prong of the *Strickland* test is not met, defendant's claim must fail." *People v. Perry*, 224 Ill. 2d 312, 342 (2007).

¶ 43     Here, defendant's ineffective assistance claim fails because he cannot demonstrate

prejudice. As explained *supra*, the trial court did not err when it considered, as a factor in aggravation, that defendant held a position of trust over A.H. Accordingly, even if defense counsel had objected to the court's consideration of this aggravating factor at sentencing and raised the issue in a postsentencing motion, such efforts would have been futile. Therefore, there is no reasonable probability that, but for defense counsel's failure to preserve this sentencing claim, the result of the proceedings would have been different.

¶ 44         Because defendant cannot establish plain error occurred or that his trial counsel was ineffective, we affirm the trial court's judgment.

¶ 45                                III. CONCLUSION

¶ 46         For the reasons stated, we affirm the trial court's judgment.

¶ 47         Affirmed.